**UNITED STATES, Appellee,**

v.

**John G. FLOWERS, Defendant, Appellant.**

No. 92–2020.

United States Court of Appeals, First Circuit.

Heard Feb. 3, 1993.

Decided June 4, 1993.

William J. Murphy with whom Joseph A. Bevilacqua, Jr., Providence, RI, was on brief for defendant, appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty. and Charles A. Tamuleviz, Asst. U.S. Atty., Providence, RI, were on brief for appellee.

Before BREYER, Chief Judge, TORRUELLA and BOUDIN, Circuit Judges.

BREYER, Chief Judge.

The appellant John Flowers pled guilty to a charge that, in 1988, he set fire to his boat to collect the insurance proceeds, in violation of 18 U.S.C. § 844(h) (using fire to commit a felony). The district court sentenced him to 12 months imprisonment. *See* U.S.S.G. §§ 2K1.4(a), (b)(4), 3E1.1, 4A1.1, Ch. 5, Pt. A (Oct. 1987). The district court ordered that the 12 month sentence begin after Flowers finished serving an 11 month sentence imposed by a different court for a different crime, namely selling a gun to a drug dealer in violation of 18 U.S.C. § 924(h) (transferring firearm for use in a drug trafficking crime). Flowers argues that this 12 month sentence is unlawful. We find his arguments unconvincing.

 1. Flowers argues that his 12 month arson sentence should run concurrently with, not consecutively after, his 11 month gun sale sentence. He concedes that the Sentencing Guidelines 1987 version (which he also concedes applies) says that a sentence "shall run consecutively" to any "unexpired sentence" for an unrelated crime that the defendant "is already serving" at "the time of the sentencing." *See* U.S.S.G. § 5G1.3 (Oct. 1987). (See appendix for the full text). But, he claims that this guideline is unlawful because it violates a statutory provision, namely a provision in the 1984 Sentencing Act, which states:

> if a term of imprisonment is imposed on a Defendant who is already subject to an undischarged term of imprisonment, their terms may run *concurrently or consecutively . . . .*

18 U.S.C. § 3584(a) (emphasis added). In his view, this statutory provision grants to the sentencing judge broad discretionary power to make sentences concurrent or consecutive, and the Guidelines improperly limit that broad power. Two circuits have accepted this view of the law. *See United States v. Nottingham,* 898 F.2d 390, 393–95 (3d Cir. 1990); *United States v. Wills,* 881 F.2d 823, 826–27 (9th Cir.1989). Five circuits have rejected it. *See United States v. Rogers,* 897 F.2d 134, 136–37 (4th Cir.1990); *United States v. Miller,* 903 F.2d 341, 349 (5th Cir. 1990); *United States v. Stewart,* 917 F.2d 970, 972–73 (6th Cir.1990); *United States v. Shewmaker,* 936 F.2d 1124, 1127–28 (10th Cir.1991); *United States v. Fossett,* 881 F.2d 976, 980 (11th Cir.1989).

Like the majority of the circuits, we believe that the statutory provision quoted above does not limit the Sentencing Commission's power to enact guidelines that determine when a sentencing court normally should impose a concurrent, and when a consecutive, sentence. For one thing, the language of the statute does not purport explicitly to constrict the Sentencing Commission's powers. Indeed, the language of this particular statutory provision does not seem to differ significantly in principle from that in many other criminal statutes that provide courts with broad discretionary powers to impose sentences for, say, "up to twenty years," or for "any term of years," or for a "term of years or a fine or both." Despite the 1984 Act's requirement that the Guidelines be "consistent with" such "provisions," 28 U.S.C. § 994(a), the Commission may (indeed, must) limit the courts' discretion to choose between a prison term and a fine, or to decide appropriately how long a "term of years" to impose in a given case. One can

similarly read the statutory words "may run concurrently or consecutively" as nonetheless permitting the Commission to write guidelines that say when, and to what extent, terms should be concurrent or consecutive.

For another thing, Congress expressly instructed the Commission to promulgate guidelines

for use of a sentencing court in determining ... whether multiple sentences to terms of imprisonment should be ordered to run concurrently or consecutively....

28 U.S.C. § 994(a)(1)(D). That instruction is not surprising, since the very purpose of the 1984 Sentencing Act is to establish a Guidelines system that would structure the way in which courts exercise their broad statutory sentencing powers. There is no obvious reason why Congress would require the Commission to structure a sentencing court's decisions about the length and type of the sentence, but forbid the Commission to structure the closely related sentencing court decision about whether an offender should serve different prison terms consecutively or concurrently. To the contrary, given the considerable amount of prison time normally at stake in such a decision, had Congress told the Commission *not* to structure concurrent/consecutive decisions, it would have maintained significant sentence disparity of the very sort that Congress, in the very same Act, was seeking to reduce (particularly in the context of a multiple count indictment, where the government possesses considerable charging discretion). *See* S.Rep. No. 225, 98th Cong., 2d Sess., 38, 51, 161 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3221, 3234, 3344 (Congress' intention to reduce disparity); *see also* U.S.S.G. § 5G1.2 (limiting, in multiple count cases, impact of prosecutor's choice of statutory violations charged, by requiring courts *first* to determine the sentence that the Guidelines require, and *then* to reconcile that sentence with the relevant statutory minimums and maximums by having sentences run concurrently or consecutively to the extent necessary to achieve the Guidelines' required total sentence).

Finally, as other circuits have pointed out, the Guidelines do not totally eliminate the sentencing court's sentence-structuring pow-

er. *See Rogers,* 897 F.2d at 137; *Miller,* 903 F.2d at 349; *Stewart,* 917 F.2d at 972–73; *Shewmaker,* 936 F.2d at 1127–28; *Fossett,* 881 F.2d at 980. A sentencing court may depart from the Guidelines rule, provided it explains why the case before it is unusual and lies outside the Guidelines' "heartland." *See* U.S.S.G. § 5G1.3 comment (Oct. 1987) (encouraging departures where consecutive sentences would be unjust); *see generally* U.S.S.G. Ch. I, Pt. A, intro. comment. 4(b) (Oct. 1987); *United States v. Rivera,* 994 F.2d 942 (1st Cir.1993). For all these reasons, we agree with the majority of circuits that the 1987 "concurrent/consecutive" guideline, U.S.S.G. § 5G1.3, is lawful.

■ 2. Flowers argues that the district court incorrectly calculated his "criminal history" score. In calculating this score, the court gave Flowers two points for his earlier 11 month gun sale sentence (thereby placing Flowers in Criminal History Category II, and producing a Guidelines range of 10–16, rather than 8–14, months). Flowers points out that the gun sale *crime* took place in 1991, three years *after* the arson crime now before us. In the normal course of events, he adds, the courts would have sentenced Flowers for the arson crime before they sentenced him for the gun sale crime, in which case his gun sale sentence could not have entered into the arson crime's criminal history calculation. Flowers argues that it would be anomalous to include the later gun sale crime in the criminal history of the earlier arson crime.

In calculating criminal history, however, the Guidelines do not focus on *when* the crimes were committed. They tell the sentencing court to "add two points for each *prior sentence* of imprisonment" (between two months and one year). U.S.S.G. § 4A1.1(b) (emphasis added). And, they define "prior sentence" as "any sentence previously imposed ... for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). They make no exception for a prior sentence imposed for a crime that took place *after* the crime currently before the sentencing judge.

The Sentencing Commission's failure to make such an exception may be less anoma-

lous than Flowers suggests. After all, had judicial (trial and sentencing) events tracked the course of criminal events in normal chronological order, Flowers' arson sentence would not have reflected his gun sale sentence, but his gun sale sentence would have reflected his arson sentence. What Flowers lost on the swings, he may have gained on the roundabouts. Moreover, it is not obvious how better to write the relevant guidelines. Keying measurement of the severity of prior crimes to prior sentences has obvious advantages in terms of fairness and of Guidelines administration. Creating an exception for the odd case of the later-crime-but-earlier-sentence would create a different anomaly, namely the fact that neither sentence would reflect the critical criminal history fact that the offender has committed two crimes, not one. The Commission's choice thus seems reasonable, at least here, where it works no obvious injustice. And, in cases where injustice appears, sentencing courts can cure it through departure.

Regardless, the sentencing court applied the relevant guidelines as they are written. And, we can find nothing unlawful about those guidelines.

■ 3. Flowers argues that his 12 month sentence is unfair because, when combined with his earlier 11 month gun crime sentence, the result (23 months) exceeds the sentence he would have received had the prosecutor charged both crimes in a single indictment. *But see* Fed.R.Crim.P. 8(a) (offenses may be charged in a single indictment only if they are similar or related). Flowers is right that, when a prosecutor charges two crimes in a single indictment, the "multiple count" rules may produce a different sentence than the sum of the two sentences that the Guidelines would have produced had the prosecutor charged the two crimes in two totally separate indictments. *Compare* U.S.S.G. §§ 5G1.2, 3D1.4 (Oct. 1987) *with* §§ 5G1.1, 5G1.3 (Oct. 1987). The Guidelines recognize this fact—which reflects the reality that prosecutors, not judges, possess the power to frame charges. *See* U.S.S.G. § 5G1.3 comment. (Oct. 1987) (expressing concern that "independent prosecutions" might "produce anomalous results that circumvent or defeat the intent of the guide-

lines"); *see also Hearings Before the Senate Comm. on the Judiciary*, 100th Cong., 1st Sess. 58–59 (October 22, 1987) (on prosecutorial charging discretion generally). The Guidelines also suggest departure when resulting consecutive sentences are unjust. *See* U.S.S.G. § 3D1.5 comment. (Oct. 1987).

We cannot say, however, that the consecutive sentences in this case are unjust. For one thing, the record contains a statement by the district court (which Flowers did not dispute) that, had the government charged the two crimes together, the resulting Guidelines range (dictated by the multiple count rules) would have been 18–24 months. Flowers total 23 month sentence falls within that range. Even if that statement is wrong and the separate sentences are a few months longer than the combined sentence would have been, we can see no obvious injustice, for the two crimes are totally separate and of different "character;" hence, the prosecution probably could not have charged both in a single indictment. *See* Fed.R.Crim.P. 8(a) (only similar or related offenses may be charged in a single indictment). We cannot see Flowers as morally "entitled" to a somewhat shorter sentence that a single indictment might have produced.

■ Regardless, we can find nothing unlawful about Flower's sentence. The district court, fully aware of its power to depart, decided not to do so. The law places the departure decision in the hands of the district court. And, we will not review a decision not to exercise that power. *See United States v. Castiello*, 915 F.2d 1, 5–6 (1st Cir. 1990) (new proceeding needed where district court wrongly thought it lacked legal power to depart, but not where it simply chose not to exercise this authority), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 787, 112 L.Ed.2d 849 (1991).

For these reasons, the judgment of the district court is

*Affirmed.*

Appendix: Excerpts From the 1987 Sentencing Guidelines Manual

### § 5G1.3. Convictions on Counts Related to Unexpired Sentences

If at the time of sentencing, the defendant is already serving one or more unexpired

sentences, then the sentences for the instant offense(s) shall run consecutively to such unexpired sentences, unless one or more of the instant offense(s) arose out of the same transactions or occurrences as the unexpired sentences. In the latter case, such instant sentences and the unexpired sentences shall run concurrently, except to the extent otherwise required by law.

*Commentary*

*This section reflects the statutory presumption that sentences imposed at different times ordinarily run consecutively. See 18 U.S.C. § 3584(a). This presumption does not apply when the new counts arise out of the same transaction or occurrence as a prior conviction.*

*Departure would be warranted when independent prosecutions produce anomalous results that circumvent or defeat the intent of the guidelines.*

## § 4A1.2. Definitions and Instructions for Computing Criminal History

### (a) Prior Sentence Defined

(1) The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense.

(2) Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history. Use the longest sentence of imprisonment if concurrent sentences were imposed and the aggregate sentence of imprisonment imposed in the case of consecutive sentences.

(3) A conviction for which the imposition of sentence was totally suspended or stayed shall be counted as a prior sentence under § 4A1.1(c).

## § 4A1.1. Criminal History Category

The total points from items (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.

(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.

(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

(c) Add 1 point for each prior sentence not included in (a) or (b), up to a total of 4 points for this item.

(d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

(e) Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b). If 2 points are added for item (d), add only 1 point for this item.

## § 5G1.2. Sentencing on Multiple Counts of Conviction

(a) The sentence to be imposed on a count for which the statute mandates a consecutive sentence shall be determined and imposed independently.

(b) Except as otherwise required by law (*see* § 5G1.1(a), (b)), the sentence imposed on each other count shall be the total punishment as determined in accordance with Part D of Chapter Three, and Part C of this Chapter.

(c) If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law.

(d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively,

but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.

## § 3D1.1. Procedure for Determining Offense Level on Multiple Counts

When a defendant has been convicted of more than one count, the court shall:

(a) Group the counts resulting in conviction into distinct Groups of Closely-Related Counts ("Groups") by applying the rules specified in § 3D1.2.

(b) Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.

(c) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.

## § 3D1.4. Determining the Combined Offense Level

The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:

| Number of Units | Increase in Offense Level |
| --- | --- |
| 1 | none |
| 1½ | add 1 level |
| 2 | add 2 levels |
| 3 | add 3 levels |
| 4 or 5 | add 4 levels |
| More than 5 | add 5 levels |

In determining the number of Units for purposes of this section:

(a) Count as one Unit the Group with the highest offense level. Count one additional Unit for each Group that is equally serious or from 1 to 4 levels less serious.

(b) Count as one-half Unit any Group that is 5 to 8 levels less serious than the Group with the highest offense level.

(c) Disregard any Group that is 9 or more levels less serious than the Group with the highest offense level. Such Groups will not increase the applicable offense level but may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level.